WILLIAM H. DISBROW *v.* NICHOLAS E. TENBROECK.

Where the defendant hired a horse, stating that he wished to ride to a place eight miles distant, and he did in fact proceed six miles further; *held*, that the horse having died on the return road, the defendant was liable as for a conversion, and that the value of the horse was the measure of damages.

In such case, an action in the nature of trover may be maintained, without allowing the defendant the price paid on the hiring.

Whether, if the owner receive extra compensation from the hirer on the latter's return, trover could be maintained? *Quœre.*

THE defendant and other persons hired horses from the plaintiff, stating that they desired to ride to Harlem, a distance of about eight miles. The party were joined by a lady equestrian at Harlem, and rode on to Kingsbridge, about six miles beyond the original destination. The horses were rested; but about half an hour after starting for home, the horse rode by the defendant faltered. The animal was taken to a stable, and was cared for under the defendant's direction, but soon died. There was no evidence of rapid riding, nor of negligence. There was some testimony to the effect that the horse was diseased when hired, and also tending to show that the plaintiff received from the defendant's companions, on their return, additional compensation for the extra use, not only of their horses, but also of the defendant's, and if not for the extra use, yet for the extended time which elapsed before their return. The plaintiff demanded the horse, and then brought, in the Marine Court, an action in the nature of trover. The value of the horse was shown to be $100, which sum was recovered as damages, and the defendant appealed to this court.

*George N. Williams* and *Francis G. Young*, for the defendant.

*Richard Howard*, for the plaintiff.

DALY, J.—The justice has found that the defendant hired the horse to go to Harlem, and his finding upon the question of fact is conclusive. The defendant rode the horse, not only to Harlem, but to Kingsbridge, which is six miles further. This was a violation of his contract. It was a conversion of the property, and he became liable therefor to the plaintiff.

The case is, in this respect, the same as *Wheelock* v. *Wheelwright*, 5 Mass. 104, where the defendant hired a horse to go on an equal distance, and to return at a time mentioned by defendant; but he went beyond that distance, and the horse died, without being rode immoderately or other neglect of the defendant. In that case, Chief Justice Parsons said, " the defendant, by riding the horse beyond the place for which he had liberty, is answerable to the plaintiff in terms. For thus riding the horse is an unlawful conversion." He further remarked that, had the horse been returned, it might have been shown in mitigation of damages, but not having been returned, the plaintiff was entitled to recover the value of the horse as damages.

The principle recognized in this case is as old as the law. The engagement, says Domat, Book 1, tit. 4, § 2, art. 1, of the person who takes any thing to hire, is to put the thing to no other use than that for which it is hired. A borrower and a hirer are answerable in all events, says Sir William Jones, if they use the thing differently from their agreement. (Jones on Bailment, 121.) And this case is put by Lord Holt, in *Cogg* v. *Bernard*, 2 Lord Ray. 915. If a man should lend another a horse to go westward, or for a month, and the bailee go northward, or keep the horse above a month, and any accident happen to the horse on the northern journey, or after the expiration of the month, the bailee will be chargeable; because he has made use of the horse contrary to the trust he was lent to him under, and it may be if the horse was used no otherwise than he was lent, that accident would not have befallen him. He is speaking of gratuitous bailees, but in this respect there is no distinction between a borrower and a hirer. Either would be liable upon violating the condition

upon which the horse was loaned or hired. (Jones on Bailment, &c., 121 ; Story on Bailment, §§ 232, 233, 413.) The defendant, in this case, having used the horse to an extent not permitted by the contract of hiring, and the horse having sickened and died before he could be brought back to the plaintiff, the plaintiff was entitled to recover the full value of the animal, which appears, by the evidence, to be the amount for which the justice rendered judgment.

To entitle the plaintiff to maintain the action, it was not necessary that he should have tendered back to the plaintiff the amount received for the hire of the horse. Where contracts of sale are repudiated upon the ground that a fraud has been practised upon the seller, and the seller seeks the restoration of the property he has parted with, or its value, he is bound to restore, or at least to offer to restore, upon the trial, whatever he has received from the party fraudulently contracting with him. But this is a very different case. Here the plaintiff was entitled to the amount received for the hire of the horse, and to a return of the horse. He brings his action against the plaintiff for converting his property—for not returning it; and he may recover for the injury sustained by the conversion, and also keep what was agreed upon between the parties, and received as an equivalent for the use of the horse.

WOODRUFF, J.—I concur with Judge DALY in the general rule stated by him, that the unauthorized use of the horse by the defendant for a purpose not warranted by the contract of hiring, was, in judgment of law, a conversion—the horse not having been in fact returned and accepted by the plaintiff. If there is nothing more proved, the defendant was liable for the value of the horse in the condition in which he was when the defendant received him.

But I am not satisfied that a subsequent acceptance of an additional compensation for the hire of the horse, with knowledge that the defendant had rode him a further distance, would not amount to a waiver of the tort. If one hire a

horse to go ten miles, and rides or drives him twenty, and the owner, with knowledge thereof, accepts an extra compensation for the additional use, he assents thereto as fully and with the same legal effect as if the hiring had been originally for twenty miles; and although he might, if the fact so appeared, have an action, on the case it may be, for any improper treatment of the horse on the journey, whereby the horse was injured or killed, he could not, after such assent, proceed for a conversion.

In the present case, however, the proof in relation to the receipt of the additional compensation is very loose and imperfect. It does not distinctly appear that the additional compensation was received, with knowledge that the horses had been rode beyond Harlem. And the words of the witness may possibly be deemed to import that those only who brought back their horses paid the extra price charged. On this question of fact, I cannot say that the finding of the justice may not have been that those who returned with their horses paid the extra charge, and that it was received without any knowledge that any of the horses had been taken to Westchester county. And though the evidence is by no means satisfactory to my own mind, I do not feel warranted in reversing the judgment. Had the defendant shown that the horse was diseased when he was hired, that should have been taken in mitigation of damages; but the proof does not appear to have satisfied the court below of that fact.

INGRAHAM, FIRST J., concurred in affirming the judgment.

Judgment affirmed.